## KAMOSKY et al. v. OWENS–ILLINOIS GLASS CO. et al.
### Civ. No. 3109.

United States District Court
M D. Pennsylvania.
March 31, 1950.

See, also, 81 F.Supp. 271.

Henry M. Biglan, Scranton, Pa., for plaintiffs.

C. H. Welles, 3rd, of Welles & Mackie, Scranton, Pa., for defendant and third party plaintiff.

Walter W. Harris, of O'Malley, Harris, Harris, & Warren, Scranton, Pa., for The Lion, Inc.

James W. Scanlon, Scranton, Pa., for The Scranton Beverage Co., Inc.

WATSON, Chief Judge.

This is a suit by Joseph L. Kamosky and Joseph G. Kamosky, a minor, by Joseph L. Kamosky, Guardian, Plaintiffs, to recover damages from Owens-Illinois Glass Company (hereinafter referred to as Owens), Defendant, for personal injuries sustained by Joseph G. Kamosky as a result of the explosion of a bottle of beer alleged to have been caused by Owens' negligence or breach of warranty of fitness for purpose. Owens made the Scranton Beverage Company, Inc., and The Lion, Inc., Third

Party Defendants, praying for judgment against them to the extent of its rights of contribution. The case was tried before the Court and a jury. After the plaintiffs rested, the Defendant, Owens, moved for a directed verdict on the ground that Plaintiffs had not established liability against Owens. After hearing arguments of counsel and after stating reasons to the jury, the Court directed the jury to find a verdict for the Defendant, Owens, and against the Plaintiffs and also to find a verdict in favor of the Third Party Defendants, The Scranton Beverage Company, Inc., and The Lion, Inc., and against the Third Party Plaintiff, Owens.

The case is now before the Court on a motion by Plaintiffs for a new trial and on a motion by the Third Party Plaintiff for a new trial against the Third Party Defendants in the event the Court grants Plaintiffs' motion. The Plaintiffs' motion it based on the following grounds: the verdict was contrary to law, the evidence and the weight of the evidence; and the Court erred in refusing to admit the testimony of Joseph Grassi and to allow the cross-examination of George Drugash, in striking out the testimony of Dr. Joseph P. Harper, and in directing a verdict for the Defendant, Owens.

Many of Plaintiffs' contentions may be disposed of by deciding the fundamental question in this case; which is, did the Plaintiffs present substantial evidence from which the jury might have found that the bottle involved in the accident was manufactured, produced, or in any way handled or possessed by Owens. At the trial the Court referring to this question, made the following remarks: "Members of the Jury, there is no evidence—no competent evidence in this case, no legal evidence, from which you would be justified in finding that the Owens-Illinois Glass Company manufactured or produced the bottle or in any way possessed or handled it. Therefore, it would be unjust and improper for you to find a verdict for the plaintiffs in this case, regrettable as it is that the plaintiffs are not to be compensated for this very serious injury which one of them sustained. A verdict at your hands for these plaintiffs would not be supported by the evidence, and would not stand, and although the Court regrets it, the Court must direct you as the defendant has requested the Court to do, to find a verdict for the defendant and against the plaintiffs."

It appears from the evidence that the Defendant, Owens, was a manufacturer of glass bottles, and supplied to The Lion, Inc., 6900 gross of new quart bottles in the years 1941 to 1946, inclusive, out of a total of 7071 gross of new quart bottles purchased by The Lion, Inc., during that period. The Lion, Inc., was a brewery where bottles were filled and prepared for distributors. Bottles filled by The Lion, Inc., included empty bottles that came back in returned cases and new bottles. The empty bottles in returned cases included bottles bought by other brewers from various bottle manufacturers as well as bottles originally filled by The Lion, Inc. In June, 1946, about the time this Plaintiff was injured, The Lion, Inc., filled from 2225 to 2250 cases of bottles each day. From this number about 200 or 300 cases consisted of new bottles, and the balance consisted of empty bottles from returned cases; that is, between 10% and 15% were new bottles. Plaintiffs now argue that the testimony was that The Lion, Inc., bottled from 250 to 2225 cases in a normal day in June, 1946. The Plaintiffs base this contention on the following portion of the cross-examination of George Drugash, supervisor in the bottle wash department of The Lion, Inc.: "Mr. Welles: How many cases would you bottle in a normal day in 1946? Mr. Drugash: Well, around 2,250. It ran from 2,225 to 250." The only reasonable inference from this portion of the testimony is that The Lion, Inc., bottled from 2225 to 2250 cases in a normal day during this period. The Scranton Beverage Company, Inc. was a distributor of cases of bottled beer, which had been filled and prepared by The Lion, Inc. The Plaintiffs purchased a case of beer from The Scranton Beverage Company, Inc., and Joseph G. Kamosky was placing it in the rear of Joseph L. Kamosky's car when a bottle from the case exploded injuring him. The

fragments of the exploded bottle are missing and were not available for use as evidence at the trial.

■ This was the evidence presented by Plaintiffs to show that the bottle involved in the accident was manufactured, produced, handled or possessed by Owens. Such was clearly not substantial evidence from which the jury, without guessing, might find that Owens did manufacture, produce, handle, or process the bottle which exploded. Under these circumstances, it was the duty of the Court to direct a verdict for the Defendant, Owens, and the verdict so directed was not contrary to the law, the evidence, or the weight of the evidence.

Plaintiffs' counsel referred to the recent opinion of the United States Court of Appeals for the Third Circuit in Diesbourg v. Hazel-Atlas Glass Company.[1] The Diesbourg case was also an action for personal injuries sustained in the explosion of a glass bottle, but in that case it was established as a fact that the bottle causing the injury "had been made by the defendant". This factual difference distinguishes the Diesbourg case from the present one.

■ The Plaintiffs contend the Court erred in refusing to admit the testimony of Joseph Grassi, by whom Plaintiffs offered to prove the general methods employed by The Scranton Beverage Company, Inc., in handling bottles, and in striking out the testimony of Dr. Joseph P. Harper, who testified that in his opinion the bottle involved here must have been negligently manufactured. Clearly this testimony was not relevant in the absence of proof that the bottle which injured Joseph G. Kamosky was manufactured, produced, handled, or possessed by Owens. Even if the testimony of Dr. Harper had been relevant, it is doubtful that he possessed sufficient qualifications to testify as an expert on the manufacture of glass, because he stated that experimentally he had had very little experience with glass; that he was never in a glass testing laboratory; and that he was never in a plant that manufactured glass.

■ Plaintiffs also contend that the Court erred in refusing to allow cross-examination of George Drugash, supervisor in the bottle wash department of The Lion, Inc., Third Party Defendant. Counsel for Plaintiffs called George Drugash as a witness on behalf of Plaintiffs and not as an unwilling or hostile witness. In the course of the direct examination of Drugash, counsel for Plaintiffs asked a question which was objected to as leading. Counsel for Plaintiffs then stated. "I request to call him for cross-examination." The Court refused the request on the ground that Rule 43(b) of the Federal Rules of Civil Procedure[2] did not apply in this situation, as the witness was not an adverse party or an officer, director, or managing agent of a corporation which was an adverse party, and because the witness had not been unwilling or hostile during the examination but had been very frank. Counsel for Plaintiffs continued to examine Drugash, who continued to answer frankly and willingly. Even if Plaintiffs' counsel had been permitted to treat Drugash as an unwilling and hostile witness, no more certain proof as to the manufacture of the bottle involved in this accident could have been established. The Plaintiffs were not harmed by the Court's ruling.

It is the conclusion of this Court that the record shows no error in the trial which was prejudicial to the Plaintiffs and that the Plaintiffs have failed to advance any valid reasons why a new trial should be granted.

---

1. 1949, 176 F.2d 410, 411.

2. 28 U.S.C.A. Rule 43(b): "A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

Now, March 31, 1950, it is ordered that the Plaintiffs' motion to set aside the directed verdict and to grant a new trial be, and it hereby is, denied, and the Third Party Plaintiff's motion for a new trial be, and it hereby is, denied.